```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: 3/6/25                   │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

                              Plaintiff,


            -against-                                95-cr-0284  (LAK)


ALFREDO GALLEGO,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### MEMORANDUM OPINION

LEWIS A. KAPLAN, *District Judge*.

            Before the Court is Defendant Alfredo Gallego's *pro se* motion for a sentence

reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]  In 1993, at 23 years old, Gallego conspired with

others, including his older brother George, to rob a United States Postal Service truck.  During the

robbery, Gallego shot and killed the USPS truck driver, Guillermo Gonzalez.  Gallego was convicted

at trial of the premeditated murder of a federal employee, which carried a mandatory life sentence.

Gallego has served approximately 32 years of his sentence, and he is now 55 years old.[2]

            Gallego previously filed a motion for compassionate release in 2021, which this Court

---

[1]       *See* Dkt 249 (Def. Mot.).  Apparently due to an error, the docket entry states that the motion
          is for Retroactive Application of Amendment 821 pursuant to 18 U.S.C. § 3582(c)(2).
          However, the defendant's motion explicitly states that he submits the motion pursuant to 18
          U.S.C. § 3582(c)(1)(A).

[2]       The BOP progress report lists Gallego's time served, as of June 2, 2024, as 31 years and 4
          months.  *See* Dkt 249 at 80.

2

denied.[3]  Gallego's renewed motion highlights several factual and legal developments that have arisen since his first motion.  For the following reasons, the Court concludes that Gallego has demonstrated extraordinary and compelling reasons warranting a sentence reduction, and that a reduced sentence is consistent with the applicable 18 U.S.C. § 3553(a) factors and the Sentencing Commission's policy statements.  Although the heinous nature of Gallego's crime still demands a severe sentence, the Court finds that continued incarceration for life is no longer necessary to serve the purposes of justice.  Accordingly, Gallego's sentence is reduced to a term of 430 months imprisonment to be followed by a lifetime term of supervised release.

### Legal Standard

18 U.S.C. § 3582 (c) (1)(A) provides that:

> "[T]he court [. . .] upon motion of the defendant after the defendant has fully exhausted all administrative rights [. . .] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction [. . .] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[4]

Although often referred to as a motion for "compassionate release," Section 3582 (c) (1)(A) does not in fact require release.  "A district court [can], for instance, reduce but not eliminate

---

[3]      See *United States v. Gallego*, No. 95-CR-0284 (LAK), 2021 WL 4803784 (S.D.N.Y. Aug. 19, 2021).

[4]      See 18 U.S.C. § 3582 (c) (1)(A).

a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."[5]

A Court evaluating a motion under Section 3582(c)(1)(A) must assess (1) whether the defendant has fulfilled the administrative exhaustion requirement; (2) whether the defendant has demonstrated "extraordinary and compelling reasons" justifying a sentence reduction; and (3) whether a sentence reduction would be consistent with the 18 U.S.C. § 3553(a) sentencing factors and any applicable Sentencing Commission policy statements.[6] As a preliminary matter, it is undisputed that Gallego has fulfilled the exhaustion requirement by seeking relief through the Bureau of Prisons before turning to this Court.[7]

## I. Extraordinary and Compelling Reasons

"[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."[8] Whether a factor "in isolation or combination" rises to the level of extraordinary and compelling is "best left to the sound discretion of the trial court."[9] Indeed, the

---

[5]      See United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

[6]      See United States v. Ramsay, 538 F. Supp. 3d 407, 414 (S.D.N.Y. 2021).

[7]      See Dkt 238 at 3 fn. 1 ("The Government does not dispute that the defendant has met Section 3582's exhaustion requirement, given that more than thirty days have passed since he submitted his request for a reduction in sentence to BOP.").

[8]      See Brooker, 976 F.3d at 237.

[9]      See id. at 238.

"only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation [. . .] *alone* shall not be considered an extraordinary and compelling reason.'"[10]

In its order denying Gallego's first motion, this Court denied relief based solely on the Section 3553(a) factors, without deciding whether Gallego had demonstrated extraordinary and compelling reasons for a sentence reduction.[11] Considered in their totality, the Court concludes that the following factors – namely, (i) Gallego's thorough rehabilitation, (ii) his extensive service to others, and (iii) his relative youth at the time of the offense, particularly in light of his brother's influence – present extraordinary and compelling reasons to reduce Gallego's life sentence.

### i. Gallego's Rehabilitation

Gallego presents a voluminous record that leaves little doubt that he is a transformed man, and it is clear that his rehabilitation is anything but ordinary. Numerous letters from family, friends, fellow inmates, supervisors, educators, pastors, and most notably, prison staff emphasize the exceptional nature of Gallego's transformation. A former associate warden at FCI McKean notes that Gallego is "a true example of extraordinary rehabilitation,"[12] and the Bureau of Prisons' progress report refers to Gallego's "extraordinary rehabilitative achievements."[13] A facilitator of the

---

[10]      *See id.* at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis added).

[11]      *See United States v. Gallego*, No. 95-CR-0284 (LAK), 2021 WL 4803784 at *1 (S.D.N.Y. Aug. 19, 2021) (noting the Court "need not decide [the issue of whether Gallego demonstrated extraordinary and compelling reasons] in view of [the Court's] conclusion with respect to the 3553 factors").

[12]      *See* Dkt 249 at 21.

[13]      *See id.* at 85.

International School of Ministry who worked closely with Gallego states that he "witnessed in [Gallego] the greatest transformation a man can experience," observing Gallego's "real and sincere remorse, repentance and rehabilitation" and noting that "[f]or twenty plus years, [Gallego] did everything humanly possible for a spiritually dead human being to repent and change his life."[14]

This sentiment is echoed by a host of others who have seen Gallego's remarkable rehabilitation firsthand. His rehabilitation is evidenced also by his model disciplinary record, which has been blemish-free for nearly fifteen years,[15] and by the deep contrition and ownership routinely expressed in his letters to this Court. Gallego, who has completed an outstanding 15,000 hours of education programming and earned multiple degrees and certificates while incarcerated,[16] has unquestionably dedicated his time to bettering himself.

Notably, the Bureau of Prisons' progress report, which was updated in June 2024, classifies Gallego as a "minimum recidivism risk," and concludes by stating:

> "Considering he began his confinement at a relatively young age of 23 years old, at this point of rehabilitation with all it has yielded, with over three decades in, acceptance of responsibility and remorsefulness of his offense, serving a longer sentence would only hinder all his progress."[17]

---

[14]

*See* Dkt 236-11.

[15]

Gallego has "maintained clear institutional conduct since March 11, 2011." *See* Dkt 249 at 84 (BOP Progress Report). His last incident was the result of ordering an unauthorized number of books from Amazon. *See* Dkt 236-15 at 1. Gallego pled guilty and accepted responsibility for his last five incident reports. *See* Dkt 249 at 84.

[16]

*See* Dkt 249 at 83 (BOP Progress Report). Richard Vallee, a facilitator of the International School of Ministry, notes that "in [his] thirteen years of teaching GED, Computer Science, and Biblical Theology in prison, [Gallego] is the first one to reach the Graduate level with a purpose to pursue his Master degree." *See* Dkt 236-11.

[17]

*See* Dkt 249 at 85.

Gallego's rehabilitation – while not alone sufficient to warrant a sentence reduction – is commendable and, in conjunction with the following factors, it weighs in favor of a sentence reduction.

### ii. Gallego's Service to Others

In addition to his thorough rehabilitation, the Court considers Gallego's extensive mentorship, leadership, and service to others.[18] During his time in prison, Gallego has served as a mental health, religious, and academic mentor, facilitated an alternative to violence program and classes on reentry, led fitness, music and religious programming, and more. While facing the prospect of life in prison without the possibility of parole, in challenging conditions marked by violence,[19] Gallego chose to devote himself to helping others and improving the institutional environment.

His record of service, and the praise expressed by those that wrote to support his motion, inspire confidence that he will continue to serve others and be a positive influence in his community. A former associate warden of FCI McKean explains that Gallego has "us[ed] his sentence to positively contribute his time and talents to help others" and "inspired many men to walk away from criminal thinking by investing in their futures."[20] She notes that Gallego helped remodel

---

[18]    See United States v. White, No. 96-CR-1123 (SHS), 2022 WL 18276933, at *3 (S.D.N.Y. Dec. 8, 2022) ("Service to others is an appropriate consideration when determining whether a sentence reduction is warranted.").

[19]    In his letters to the Court, Gallego has detailed the frequent violence, drug overdoses, and lockdowns he has confronted in prison. See e.g., Dkt 254.

[20]    See Dkt 249 at 21.

"the culture of the compound from one focused on violence and drugs to one dedicated to learning and transformation": a "drastic and positive change," which she describes as "the most rewarding experience of [her] career."[21]  A senior pastor notes that Gallego "is and has been instrumental in facilitating the prison ministry" by using his knowledge of prison policy and administration to help them navigate the system and install a network of schools throughout the BOP prisons.[22]  Former inmate Andrew Ramsay writes that Gallego's positive influence "helped [him] tremendously in [his] personal development journey," enabling him to "becom[e] the best version of [himself] [. . .] in society."[23]  A professor of the University of Pittsburgh, who taught Gallego in a post-secondary college program, notes that he "was extremely impressed with Mr. Gallego's [. . .] amazing compassion, mentoring, and leadership skills."[24]

This commitment to service, which both Gallego and his supporters believe will persist if he is released, far exceeds mere rehabilitation.[25]  Gallego has demonstrated not only that he has the ability to reintegrate into society as a law-abiding person, but also that he has the potential and drive to help transform his community for the better.  As a testament to this, Gallego's sister,

---

[21]    See id. at 22.

[22]    See id. at 24.

[23]    See id. at 40.

[24]    See id. at 89.

[25]    See United States v. Torres, 464 F. Supp. 3d 651, 663 (S.D.N.Y. 2020) ("In ordinary parlance, 'rehabilitation' is defined as '[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes.'") (quoting Rehabilitation, Black's Law Dictionary (11th ed. 2019)).

who has offered to sponsor him, writes that, if released, he "will be a positive influence, an inspiration, and mentor to [her] sons, as to what is possible with dedication and hard work to overcome challenges," and will have "an opportunity to give back to the community."[26]

### iii. Gallego's Relative Youth

The Supreme Court has emphasized that "youth matters in sentencing."[27] In this and other districts, courts have considered a defendant's relative youth at the time of the offense or conviction in the assessment of whether a defendant has presented extraordinary and compelling reasons that justify a sentence reduction.[28] And in light of "evolving science and data surrounding youthful individuals" suggesting "cognitive changes lasting into the mid-20s affect individual behavior and culpability," the United States Sentencing Commission amended Section 5H1.1 of the Sentencing Guidelines to note that "[a] downward departure [. . .] may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses."[29] This amendment acknowledges that "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems," and that "youthful individuals

---

[26]
　　*See* Dkt 249 at 27.

[27]
　　*See Jones v. Mississippi*, 593 U.S. 98, 105 (2021).

[28]
　　*See e.g., United States v. Ramsay*, 538 F. Supp. 3d 407, 423 (S.D.N.Y. 2021); *see also United States v. McCoy,* 981 F.3d 271, 286 (4th Cir. 2020) ("[I]n determining that release was appropriate for all of the defendants, the courts focused on the defendants' relative youth – from 19 to 24 years old – at the time of their offenses, a factor that many courts have found relevant under § 3582(c)(1)(A)(i).").

[29]
　　*See* Amendment 829, Federal Sentencing Guidelines Manual Amendment (effective Nov. 1, 2024).

generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood" and are "more amenable to rehabilitation."[30]

To be sure, Gallego was not a minor at the time of the murder. At 23 years old, he was a young adult. Yet psychological and scientific research – and increasingly, the law – recognize that a young adult may be more prone to reckless behavior and susceptible to outside influences. At 23, due to ongoing cognitive development, Gallego still was maturing and, as evidenced by George's own statements, Gallego may have been especially vulnerable to the pressure and manipulation of his older brother.

In his letter dated May 7, 2024, George – who orchestrated the plot and recruited Gallego – admits that his "influence ultimately compelled [Gallego] to commit the offense for which he was imprisoned" and that Gallego did so in a "misguided attempt to help [him] during a period of extreme hardship" during which George had communicated his desperation and thoughts of suicide to his brother.[31] George – who already had engaged in a distinct credit card fraud scheme and went on to perpetrate another fraud while incarcerated – persuaded Gallego to assume the highest risk role of commandeering the vehicle and supplied Gallego with his gun and home-made silencer.[32]

Certainly, Gallego's age does not absolve him of responsibility for the heinous crime he committed, and his youth alone is not extraordinary. But in combination with the evidence of the

---

[30]     *Id.*

[31]     *See* Dkt 249 at 19.

[32]     *See* Dkt 236 at 5.

pressure exerted by George and Gallego's remarkable rehabilitation and record of service to others, the "totality of the circumstances" present extraordinary and compelling reasons for a sentence reduction.[33]

## II. Section 3553(a) Factors

In light of the new information before it, the Court reassesses whether a reduction of Gallego's sentence would be consistent with the factors listed in Section 3553(a). Several of those factors weigh in favor of a reduced sentence. First, the "history and characteristics of the defendant" suggest that a sentence of life – in this unusual case – now would be greater than necessary to accomplish the purposes of sentencing.[34] As discussed, Gallego was only 23 years old at the time of the offense. Evidence of postsentencing rehabilitation is also relevant to this factor,[35] and Gallego's thorough and well-documented rehabilitation likewise weighs in favor of a sentence reduction. Second, as a "minimum recidivism risk" with a model disciplinary record,[36] Gallego no longer presents a threat to the public.[37] And third, a reduced sentence would provide Gallego the opportunity to pursue his planned post-graduate educational and vocational training and to seek

---

[33]
See *United States v. Phillips*, 469 F. Supp. 3d 180, 184 (S.D.N.Y. 2020).

[34]
See 18 U.S. Code § 3553(a)(1).

[35]
See *Pepper v. United States*, 562 U.S. 476, 491 (2011).

[36]
See Dkt 249 at 81-85 (BOP Progress Report).

[37]
See 18 U.S.C. § 3553(a)(2)(C).

11

adequate medical care from a Veterans Affairs facility.[38]

In its previous order, the Court emphasized that it must consider "the need for the sentence imposed [. . .] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct."[39]  It is undeniable that Gallego's crime – a premeditated murder – is of the utmost seriousness.  Gallego himself describes his offense as "brutal" and "callous," and he acknowledges that his actions caused "immeasurable loss, grief and pain."[40]  The Court remains convinced that an offense as grave as this requires an appropriately serious sentence, one which reflects the severity of the crime and the need for deterrence.  For this reason, immediate release of Gallego is not appropriate because it would fall short of providing just punishment.  But in light of the other Section 3553(a) factors which favor a sentence reduction, a 430 month sentence with a lifetime of supervised release would achieve this end.  Indeed, a 430 month sentence would be a *de facto* life sentence for many adults.[41]  Given the severity of a 430 month term of imprisonment and the unique circumstances of this case, this reduction would also be unlikely to have an adverse impact on

---

[38]
    *See* 18 U.S.C. § 3553(a)(2)(D); *see also* Dkt 249 at 85 (describing Gallego's plans after release).

[39]
    *See United States v. Gallego*, No. 95-CR-0284 (LAK), 2021 WL 4803784 at *1 (S.D.N.Y. Aug. 19, 2021) (citing 18 U.S.C. § 3553(a)(2)(A)-(B)).

[40]
    *See* Dkt 249 at 3.

[41]
    In 2022, the life expectancy of a male in the United States at birth was 74.8 years. *See* Mortality in the United States, 2022 (https://www.cdc.gov/nchs/data/databriefs/db492.pdf). The life expectancy of an incarcerated person is significantly shorter. *See* The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003 (https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2012.301148).

12

general deterrence.[42]

Granting a sentence reduction in this case also would promote respect for the law and the interests of justice in two important respects. First, it would promote compliance with laws and BOP regulations during incarceration by incentivizing incarcerated individuals to live law-abiding lives even if they have little prospect of release. As the letters of Gallego's supporters have shown, even a single inmate can have an important impact on the culture of an institution and those around him. Second, it would strengthen the legitimacy of the courts by demonstrating that the law takes into account the individual characteristics of defendants, including the lives they have lived during their periods of incarceration. Recognizing Gallego's unique rehabilitation and circumstances affirms that justice is not blind to context or change over time.

Finally, "the relevant U.S. Sentencing Commission policy statement requires the Court to determine that 'the defendant is not a danger to the safety of any other person or to the community' in order to grant release."[43] Gallego presents a low risk of reoffending because of his demonstrated rehabilitation, model disciplinary record, age, thorough and feasible reentry plan, and family and community support. As mentioned, the Bureau of Prisons has classified Gallego as the lowest level recidivism risk, and concluded that Gallego displays all categories of "inmate reentry

---

[42] Research suggests that general deterrence is primarily a function of the certainty of punishment and not its severity. *See* Daniel S. Nagin, *Deterrence in the Twenty-First Century: A Review of the Evidence*, 42 Crime & Justice 199 (2013); *National Institute of Justice, Five Things About Deterrence* (June 5, 2016) [available at: https://nij.ojp.gov/topics/articles/five-things-about-deterrence#one] ("The certainty of being caught is a vastly more powerful deterrent than the punishment.").

[43] *See United States v. White*, No. 96-CR-1123 (SHS), 2022 WL 18276933, at *5 (S.D.N.Y. Dec. 8, 2022) (quoting U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018)).

skills [. . .] that can serve him as a productive law abiding citizen."[44]


### *Conclusion*

For the foregoing reasons, the Court reduces Gallego's sentence to 430 months to be followed by a lifetime of supervised release.

SO ORDERED.

Dated:        March 6, 2025

Lewis A. Kaplan
United States District Judge

---

[44] *See* Dkt 249 at 85.